ORTEGA, P. J.
*815 *530 Petitioner sought a restraining order against respondent, her husband, under the Family Abuse Prevention Act (FAPA). ORS 107.700 - 107.735. The court issued an ex parte FAPA order, and respondent requested a hearing, at which the court continued the restraining order. On appeal, respondent seeks reversal of the FAPA order, arguing that the trial court erred in its decision because petitioner failed to prove that she was in "imminent danger of further abuse" or that he presented a "credible threat to [her] physical safety," ORS 107.718(1). We agree and, therefore, reverse.
We are bound by the trial court's factual findings if they are supported by any evidence in the record and, in the absence of explicit findings on disputed issues, we presume that the court found facts consistent with its judgment in petitioner's favor. J. V.-B. v. Burns , 284 Or. App. 366, 367, 392 P.3d 386 (2017). We review the trial court's legal conclusions for errors of law. Id.[1]
Before the incident that led to the FAPA order, petitioner and respondent were married and living together with their two-year-old daughter. On May 4, 2017, an argument between petitioner and respondent escalated. Respondent began swearing and screaming at petitioner, approached her with a raised fist, but did not strike her. Instead, he grabbed a pillow from their sofa and pushed her with it.
At some point, petitioner left the house with her daughter to get away from respondent. She got into her car and tried to drive away, but respondent prevented her from leaving by getting into her car and taking her cell phone. He eventually got out of petitioner's car but, once she started driving away, he got into his car and followed her down a two-way dirt road. He drove around petitioner so that they were driving side-by-side, at which point petitioner believed *531 that he was attempting to "run [her] off the road," risking her life. He eventually turned around while petitioner drove to her friend's house and called the police. Criminal charges were filed against respondent.
After the May 2017 incident, petitioner and respondent continued to live together without further violent altercations. However, the couple separated at the beginning of August 2017, and petitioner and their daughter moved out of the family home. On August 31, petitioner sought an ex parte FAPA restraining order out of fear of respondent's tendency to escalate arguments to "frightening and unsafe levels." The court granted the order, and respondent requested a hearing.
At the contested hearing, petitioner testified about the May 2017 incident, but also described a physical altercation that occurred in 2015-significantly more than 180 days before filing of the petition-which started out as a verbal argument but resulted in respondent grabbing her aggressively. Petitioner stated that when she finally moved out of the couple's home, she agreed to a 50/50 parenting plan. However, out of concern for her own and her daughter's safety, she believed that the parenting plan had to be modified. As evidence supporting her concern, petitioner introduced an email exchange, text messages, and a recorded phone call, all of which occurred after they separated. In the email, respondent admitted his fault during the May 2017 incident. Nevertheless, petitioner still felt unsafe because respondent would not respect her boundaries when they talked. Petitioner also pointed to some text messages which showed that respondent would repeatedly ignore her requests that he stop contacting her until she was ready to talk about the new parenting plan. A day later, petitioner and respondent had a phone conversation where respondent stated that he "did not try to kill her" in May 2017 and that he "could have because [he] was out of control" but had no intent to kill her on that day. Although petitioner admitted that there had been no "other violent physical incidents" since May 2017, she stated *816 that the "combination of that phone call and those text messages terrified her" and that she was worried that another fight would occur if she did not obtain a restraining order. *532 Respondent testified that he was wrong in May 2017 and did not dispute that his actions then were dangerous and unsafe. However, he maintained that, since the separation, he had not been a threat to petitioner. He testified that most of the evidence presented by petitioner also showed that he did not interact with her other than through email or by phone-that is, he never went to her home or work. He explained that all he wanted to do was maintain the 50/50 parenting plan.
The court continued the restraining order after finding that there was
"more than sufficient evidence by a preponderance to establish the abuse as *** outlined, *** [and] that given the history of the parties, *** petitioner believed that respondent was a credible threat to her physical safety and well-being, *** and that she was in danger of further abuse if the order had not been granted."
Under ORS 107.718(1), a trial court may issue a FAPA restraining order if a petitioner proves by a preponderance of the evidence that the respondent (1) "abused" petitioner in the 180 days preceding the filing of the petition, (2) presents an "imminent danger of further abuse" to petitioner, and (3) "represents a credible threat to the physical safety of the petitioner." See T. K. v. Stutzman , 281 Or. App. 388, 391, 383 P.3d 287 (2016) ("A petitioner must meet each of those requirements to obtain a FAPA restraining order." (Internal quotation marks omitted.) ).
On appeal, respondent concedes that the May 2017 incident constituted abuse as defined by ORS 107.705(1),[2] and we therefore address only his challenge to the sufficiency of the evidence as to the other two requirements. Here, we agree with respondent that the record lacked evidence to *533 support the conclusion that petitioner was in "imminent danger of further abuse" or that respondent presented a "credible threat" to petitioner's physical safety.
The court appeared to conclude that, given the parties' volatile history, respondent presented a credible threat. However, the nature of the parties' relationship changed once they no longer lived together, which we have treated as significant. See C. M. V. v. Ackley , 261 Or. App. 491, 495, 326 P.3d 604 (2014) (once the parties stopped cohabitating, their volatile, sometimes violent history was not sufficient to demonstrate that the respondent posed a credible threat and that the petitioner was in imminent danger of further abuse). Since the May 2017 incident, there have been no physical or volatile interactions between the parties; they have had very limited contact, mainly to discuss the parenting plan. We acknowledge that "[a]n overt threat of physical violence is not required" to prove that respondent posed a credible threat, and that a trial court "may consider testimony regarding events outside the 180-day window." Hubbell v. Sanders , 245 Or. App. 321, 327, 263 P.3d 1096 (2011). However, given that the parties were living apart without further incident and had very little contact, and given the evidence of prior incidents of violence in this particular case, the record here does not establish an imminent danger of further abuse or that respondent represents a credible threat to petitioner's physical safety. See Burns , 284 Or. App. at 372, 392 P.3d 386 (because the parties ceased cohabitating, the "limited contact between [the] respondent and [the] petitioner since the *** incident [fell] short of what would be required to prove that [the] respondent posed an imminent threat to [the] petitioner's safety").
Furthermore, although the court acknowledged petitioner's fear of respondent, that subjective belief, however genuine, is *817 insufficient to sustain a FAPA order. See Stutzman , 281 Or. App. at 391, 383 P.3d 287 ("A petitioner's subjective fear is insufficient to support a FAPA restraining order."). The evidence here falls short of what would be required to prove an imminent danger of further abuse and a credible threat to petitioner's physical safety. Accordingly, we reverse.
Reversed.

Petitioner waived appearance, and respondent does not request de novo review. Although we have the discretion to review the trial court's grant of a FAPA order based on that standard, because this is not an exceptional case, we decline to do so. See ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review de novo "only in exceptional cases"); see also Burns , 284 Or. App. at 367, 392 P.3d 386.

ORS 107.705(1) states that:
" 'Abuse' means the occurrence of one or more of the following acts between family or household members:
"(a) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.
"(b) Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury.
"(c) Causing another to engage in involuntary sexual relations by force or threat of force."