614 May 21, 2025 No. 448

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

M. M. B.,
*Petitioner-Respondent,*

*v.*

RAYMOND JOSE RIVERA,
*Respondent-Appellant.*

Clackamas County Circuit Court
22PO10811; A180182

Jeffrey S. Jones, Judge.

Argued and submitted February 5, 2024.

Rachel Philips argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this domestic relations case, respondent appeals from a Family Abuse Prevention Act (FAPA) restraining order that was continued after a contested hearing. Respondent asserts in a single assignment of error that there is insufficient evidence to support continuing the FAPA order. Specifically, respondent argues that there is insufficient evidence of an "imminent danger of further abuse" and insufficient evidence of a "credible threat to physical safety." We do not consider respondent's first argument because "imminent danger of further abuse" is not a requirement to continue a FAPA order. As to the second argument, we have reviewed the record and conclude that there is sufficient evidence for the trial court to have concluded that respondent posed a credible threat to petitioner's safety. Accordingly, we affirm.

When we do not exercise our discretion to review *de novo*, which is not at issue in this case, we are bound by the trial court's factual findings if they are supported by any evidence in the record, and in the absence of express factual findings, we presume that the court made findings consistent with its ultimate judgment. *J. V.-B. v. Burns*, 284 Or App 366, 367, 392 P3d 386 (2017). We review the trial court's legal conclusions for legal error. *Id.* We set out the pertinent facts with that standard of review in mind when we address the challenge to the sufficiency of the evidence of a "credible threat to physical safety."

As an initial matter, respondent's first argument that there is insufficient evidence of an "imminent danger of further abuse" is not a basis to reverse the trial court's continuation of the FAPA order because that is not an element that the court needed to determine in deciding whether to continue the FAPA order. *Compare* ORS 107.718(1) (outlining criteria for entering an initial FAPA order), *with* ORS 107.716(3)(a) (outlining criteria for continuing a FAPA order following a contested hearing). Specifically, after a petitioner has filed a FAPA petition, there is an *ex parte* hearing, and the court enters a FAPA order if the petitioner shows that the petitioner has been "the victim of abuse committed by the respondent within 180 days preceding the filing of

the petition, that there is an imminent danger of further abuse to the petitioner and that the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child." ORS 107.718(1). Following the initial order, if the respondent contests the order, the respondent may request a hearing. ORS 107.718(10). After a contested hearing, the court then may continue the FAPA order if the court finds that:

"(A)   Abuse has occurred within [180 days];

"(B)   The petitioner reasonably fears for the petitioner's physical safety; and

"(C)   The respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child."

ORS 107.716(3)(a). Therefore, although a finding of an "imminent danger of further abuse" is a requirement to obtain an initial FAPA order, the standard for continuing a FAPA order does not contain such a requirement. *See K. E. B. v. Bradley*, 327 Or App 39, 45, 533 P3d 1128 (2023) (explaining that "[i]t is no longer necessary that the trial court find an imminent danger of further abuse, as previously required at the continuation stage; it is now enough for the court to find that '[t]he petitioner reasonably fears for the petitioner's physical safety'" (quoting ORS 107.716(3)(a)(B) (brackets in *K. E. B.*)). Thus, we reject respondent's first argument.

We turn to respondent's second argument, which challenges the sufficiency of the evidence of a "credible threat to physical safety." There is evidence in the record that about a year before the contested hearing, respondent, who is petitioner's father, lived in petitioner's apartment along with respondent's girlfriend, petitioner's child, petitioner's boyfriend, and two other people. Multiple witnesses testified that, during that time, respondent made violent and threatening statements to them about petitioner. Those statements include that respondent "doesn't care if she dies or that he'll even put his hands on her or, like, physically, like, kill her or hurt her" and that "he wishes that he could just take her out of this world and his problems would be gone, because she was one of the biggest problems that he had." Petitioner also testified that, in addition to her

witnessing respondent hitting her five-year old child in the face, respondent once told her that he wanted to "slit [her] throat" during an argument and that he "made threats all the time." Moreover, there is evidence that respondent has been physically violent against his girlfriend in front of petitioner and her child. Specifically, petitioner testified that she saw him "beat her up, drag her by her hair, punch her, try to stab her with a knife when I was holding a baby and [child] was right there. So I've seen the violence, and I'm scared of him. I'm scared to death of him, what he could do."

Respondent moved out of petitioner's apartment about a year before the contested hearing, and most of the incidents described at the hearing occurred before respondent moved out. The only event that occurred within the six months preceding the petition was that late one night, respondent knocked on petitioner's child's window and then drove away. An hour or two later, petitioner saw respondent driving in the apartment complex again. More than one witness testified to hearing knocking on the window and seeing respondent driving around the apartment complex in his car that night. Although no witness specifically saw respondent knock on the window and there was conflicting testimony as to whether that incident occurred at all, the trial court was permitted to infer that it was respondent who knocked on the window. *See K. G. G. v. Lucarelli*, 310 Or App 835, 838, 486 P3d 860 (2021) (explaining that, "where the parties disagree about the facts, it is for the trial court to make the necessary credibility determinations and factual findings, and, if there is any evidence to support the trial court's findings, we are bound by those findings").

We conclude that there was sufficient evidence for the trial court to determine that respondent posed a credible threat to petitioner's physical safety given the totality of the circumstances, which included the context of respondent's pattern of making threatening statements about petitioner, his prior violent acts, and the incident where respondent knocked on petitioner's child's window and drove away. Although petitioner testified to only one event that occurred within the 180-day timeframe, the trial court was permitted to consider events outside that timeframe. *See*

*J. K. v. Kargol*, 295 Or App 529, 533, 435 P3d 814 (2019) (observing that an overt threat is not required to prove that a respondent posed a credible threat and that a court may consider events outside the 180-day timeframe in making its determination).

Further, to the extent that respondent argues that he did not pose a credible threat to petitioner because he had moved out and did not have contact with petitioner for about a year before the window-knocking incident, we disagree with that assertion. Although parties living separately and having limited contact is a factor in determining whether a respondent is a credible threat, we conclude that the evidence here is sufficient to support the trial court's conclusion because of the severity of the window-knocking incident when combined with respondent's prior threats and violent acts. *Cf. id.* (concluding that, because the parties were living apart and had no physical or volatile interactions since they started living separately, the respondent did not pose a credible threat to the petitioner).

Finally, we readily conclude that, for similar reasons described above, there is sufficient evidence for the trial court to conclude that respondent intentionally, knowingly, or recklessly placed petitioner in fear of imminent bodily injury within the 180 days preceding the petition and that petitioner reasonably feared for her physical safety. *See* ORS 107.705(1)(b) (defining "abuse"); *see also K. G. G.*, 310 Or App at 836 (explaining that "fear" is "judged by an objective standard, considering the totality of the circumstances"). Accordingly, the court did not err in continuing the FAPA order.

Affirmed.